<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH ARUANNO, | : | Civil No. 11-1151  (WJM) |
| Plaintiff, | : | |
| v. | : | <u>OPINION</u> |
| STEVEN JOHNSON, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

    JOSEPH ARUANNO, #363
    Special Treatment Unit- Annex
    P.O. Box #CN905
    Avenel, NJ 07001

**MARTINI**, District Judge:

Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, seeks to file a Complaint against Steven Johnson, Assistant Superintendent of the Special Treatment Unit, Director Merrill Main, and 25 John/Jane Does. <u>See</u> 28 U.S.C. § 1915(a).  This Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  This Court has screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and, for the reasons explained below, will dismiss the Complaint for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint showing standing to pursue an access to courts claim.  <u>See</u> <u>Tucker v. Arnold</u>, 361 Fed. App'x 409 (3d Cir. 2010).

## I.  BACKGROUND

Plaintiff has been civilly committed as a sexually violent predator since 2004.  As explained by the Third Circuit Court of Appeals,

> [i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence.  As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation.  Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey.  A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years.  The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence.  The New Jersey Supreme Court denied certification.  State v. Aruanno, 793 A. 2d 716 (N.J. 2002) (table op.).
>
> In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 et seq. . . . .
>
> At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . .  Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia.  Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence.  In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless.  According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia . . . .
>
> Aruanno testified on his own behalf at the hearing.  He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment

> petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty . . . .
>
> The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment. Aruanno appealed the order, and the Appellate Division affirmed. In re Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App. Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the conviction, and remanded the case.[1] See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

In the Complaint presently before this Court, Plaintiff asserts the following facts:

> This complaint involves the defendants deliberately denying plaintiff Joseph Aruanno, JA, legal access such as access to the courts, attorneys, institutional legal access such as a law library, etc., since 2004 when he was civilly committed . . . .
>
> The motivation for submitting this complaint is after just hearing from one of his attorneys, Mr. Christopher Murray from the law Offices of Covington & Burling in Washington DC, and being told they have been trying to reach JA here but all the unit phones are always busy. And after contacting the defendant . . . Steven Johnson . . . and being told "THERE IS NO SUCH THING AS A PRIVATE LEGAL CALL" contrary to NJ:10AA and Federal law,

---

[1] This Court was not able to determine through online research the outcome of the remand.

3

which is needed just to make contact, and where that case was just postponed yet once again.

And for which Mr. Murray's Office has also been in contact with . . . Dr. Merrill Main . . . who . . . refuse[s] to comply with the law even after they have adopted NJ10:A . . .

Also at this point it must be mentioned that many of JA's attorneys are out of state and cannot just simply visit.

Also during 2009 JA managed to obtain a REMAND involving his criminal conviction but the defendants refused to take him to court in Cape May for the hearing which resulted in failure.  But instead have chosen to isolate JA for other litigation against the defendants . . .  And where it must be mentioned that hearing date was scheduled for the month of November-2009.

Also the attorney in that case, Mr. Timothy Reilly, who was forced to ride all the way up here from Cape May . . . . because they denied him phone contact with JA.  And where it was rare that he managed to get in and stay in because many don't even get that far such as attorney Ian Marx . . . in an event which occurred during September-2009 where they let him in but forced him to leave minutes after making contact with JA . . . .

And at this point we must mention that JA has been on contact with both defendants about not receiving all the mail that is sent him from his attorneys.  And which includes an event by an Officer Underwood who has thrown out mail in front of other residents here laughing about it . . . .  [T]here has been (some) replies to remedies submitted about the lack of phone communications basically saying the same thing about there being no need for private communications avoiding the issue(s) that there are not enough phones in the units . . . .

Also this case is about being denied the ability to make phone contact with prospective attorneys, law clinics, legal aid clinic, etc., where there are no replies to letters raising questions about the mail here yet once again.

Other failures and harm inflicted by the defendants are case No. 08-305 in the District Court where the defendants had JA in isolation inflicting a series of violent brutal attacks leaving him

> physically and mentally unable to proceed on his own . . . . And where the defendants had thrown out his discovery where he could not proceed there; where despite denying access to a law library they broke JA's typewriter then "lost" a brand new one he received . . . .
>
> this case is also about retaliation after NJN television contact the facility about interviewing JA for an episode of Due Process despite Ms. Christine Eckman having set an appointment for the interview it was denied by the defendants where after a Ms. Bennet having asked JA what the interview was about he made clear it was the crimes being committed here . . .
>
> Also in this case we will address the defendants denying JA phone access with his family, friends, etc., which is therapeutic according to the defendants . . . . And where they will testify at trial that every time they call all phones are always busy.
>
>    *     *     *
>
> Finally, this case will also be about . . . order[ing] regular phone in conjunction with plaintiffs legal rights. And which would be best by ordering the defendants to provide JA with a cell-phone for such contacts. And where we will also demand 10,000,000.00 in punitive damages as relief for the harm that has already been deliberately inflicted.

(Docket Entry #1, pp. 7-10.)

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

5

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

---

[2] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the

United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

"Like prisoners, individuals who are involuntarily committed to a mental institution have the right to access the courts."  Tucker v. Arnold, 361 Fed. App'x 409, 409 (3d Cir. 2010). Standing of civilly committed persons to pursue an access to courts claim is governed by Lewis v. Casey, 518 U.S. 343, 349 (1996).  See Tucker, 361 Fed. App'x at 411.  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).  "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  Monroe at 205-206 (quoting Christopher at 416-17).  For example, in Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes.  In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike.  That claim, on its face, was insufficient to state a claim under Harbury.  So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous.  Nor did they

> maintain that they had no other remedy to compensate them for
> their lost claims.  Even liberally construing their complaints as we
> must do for pro se litigants, they do not sufficiently allege that they
> have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

Plaintiff maintains that Civil No. 08-0305 (JLL) was dismissed because defendants interfered with his use of the law library, typewriter, etc.  However, Judge Linares dismissed the excessive force claim against officer Booker because Plaintiff refused to comply with discovery.  See Aruanno v. Booker, Civil No. 08-0305 (JLL) opinion (D.N.J.), aff'd, 397 Fed. App'x 756 (3d Cir. 2010).  The Third Circuit affirmed, finding that "[t]he record supports the District Court's finding that Aruanno's failure to cooperate with discovery was willful."  Aruanno, 397 Fed. App'x at 758.  To the extent that Plaintiff seeks to raise an access to courts claim with respect to Aruanno v. Booker, Civil No. 08-0305 (JLL) opinion (D.N.J.), aff'd, 397 Fed. App'x 756 (3d Cir. 2010), the claim is dismissed with prejudice.

Plaintiff further complains that various attorneys representing him in unspecified actions have had difficulty reaching him by telephone because the lines are often busy, and have not always been able to visit him for as long as Plaintiff desired.  Assuming, without deciding, that a person could ever maintain an access to courts claim involving actual injury to a case wherein he is represented by an attorney, this Court will dismiss the Complaint because Plaintiff does not assert facts supporting a conclusion that he lost the opportunity to pursue a nonfrivolous claim, and Plaintiff does not assert facts supporting a conclusion that he had no other remedy to compensate him for his lost claim.  Accordingly, this Court will dismiss the First Amendment access to courts claim based on injury to cases other than Aruanno v. Booker, Civil No. 08-0305

9

(JLL).  See Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police, 411 F. 3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost).  However, because it is not inconceivable that Plaintiff might be able to correct the aforesaid pleading deficiencies by filing an amended complaint asserting facts that establish standing to pursue an access to courts claim, the dismissal of the general access to courts claim will be without prejudice to the filing of an amended complaint stating a cognizable access to courts claim within 30 days.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 108 (3d Cir. 2002).

## IV.  CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's application to proceed in forma pauperis and dismiss the Complaint with out prejudice.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: June 8 , 2011